The first matter set for oral argument this morning is No. 19-4068 v. New York City Department of Education. We have Mr. Ashanti to begin, is that right? Yes, Your Honor. Please proceed.  Okay. Yes, may it please the Court. The central issue in this matter is, did the New York City Department of Education have a legal obligation to provide penancy services to the student A.N. for the 2018-2019 school year? Because the answer is a resounding yes, and the record before this Court is devoid of any evidence to suggest that DOE fulfilled its obligations towards this student. The order of the lower court denying appellant's preliminary injunction motion, which was wholly premised on the factual basis that DOE did fulfill that obligation, and then the court altered its rationale in its order denying appellant's motion for reconsideration by finding that DOE had no such obligation, is based on both a clearly erroneous assessment of the facts and an erroneous assessment of law. And therefore... Mr. Ashanti, Mr. Ashanti, I'm going to interrupt you here for a minute because time is short. So, you know, we have pointed you and asked for additional briefing on the applicability of our recent decision in Ventura de Paulino v. New York City Department of Education, which involves facts that are essentially identical here, the same kind of transfer that was made unilaterally by the parents from one school to another that they asserted provided substantially similar services, and because the services were allegedly substantially similar, they alleged an obligation in the city during this kind of pendency period, to fund this different setting. And you asserted in your letter brief that there were factual distinctions here, but I was unable to identify anything that was a meaningful distinction. Could you help me understand why your case is not directly controlled by Ventura de Paulino? Yes, Your Honor, very clearly, the Ventura de Paulino decision in multiple locations was based upon a factual premise that DOE offered I-HOPE, which is another non-public school other than the school where the student was attending, I-BRAIN, as a school where the student could have pendency services, that essentially DOE offered I-HOPE for the school. Yes. Can you hear me, counsel? Yes, I can. That's a distinction, but why is it any different? Why does it make the slightest bit of difference, the holding of Ventura was that while a city may make a change of that sort, that the parents may not, for any number of reasons, because that other school may have higher tuition, any number of other things, that was the key of Ventura. The fact that the city had originally put the child in I-HOPE, while here it happened only after appeal, even here, the city allowed the child to be there, I don't see how that makes any difference. Can you help me? Yes, Your Honor. In footnote 65 of the Paulino decision, the court specifically states that the factual circumstance is not presented in that case where the school district either refuses or fails to provide pendency services to the child. That are the facts that we have here, and that's what I'm trying to impart to the court that... I thought you were claiming that because of changes at the school that the student was attending, it no longer substantially conformed to what had been expected by everyone and therefore it was kind of de facto no longer available even though de jure it was. I mean, that's a different kind of... I don't see that as really what footnote 65 is discussing. Your Honor, both things are true. So the reason for the parents to have unilaterally placed the student is really not relevant because if the students, if the parents had placed the student in I-HOPE, that also would have been a unilateral placement, and which would require a 10-day notice for the parents to have sent to the district. And that's what they did here. There's a process... But it's the same... If he had stayed at the same school, it would have been no change. That was what was contemplated, that was the situation discussed exactly in Ventura de Paulino. Except the district of DOE never offered I-HOPE. They never took any affirmative steps to place the student there. There's an affirmative obligation... What difference does that make? What difference does that make? That makes all the difference, Your Honor, in that... I'm sorry? Just please let Judge Calabresi finish his question. He's saying, what difference does that make? Yeah. Go ahead. Please answer that question, what difference does it make? It makes all the difference, because there's an affirmative obligation of a school district to provide a seat for the provision of penancy for a student, penancy services. And if they do not, then that leaves the parent in a precarious situation of having to use self-help. And that's what's being referred to in footnote 65 of the decision. So, with regard to the facts, though, how do your facts differ at all from those of the parent in Ventura de Paulino? Right. Again, I'm trying to impart... The court found that I-HOPE was offered in Ventura de Paulino. In Netsky, in this case, that is not the case. There was never any factual finding that I-HOPE was offered, or any other school was offered by the district for the penancy services of the student. And there's an affirmative obligation on the part of the district to provide for the penancy of a student. But when the school, counsel, but when the school did not appeal your getting I-HOPE for the child, wasn't that the same as offering? No, Your Honor. Okay. It was not the same. Okay. So, one is a contested hearing from the prior school year that really does not... So, the DOE actually contested against I-HOPE, and they lost because the parents won at the administrative hearing level. And then, because they won, that became the baseline. The programmatic components of the educational program that the student received the 17-18 school year became the baseline for penancy for the 18-19 school year. However, the district did not take any affirmative steps to offer a school I-HOPE or anywhere else for, again, because the district has the right to choose the location. It could have been somewhere else, but they didn't take any steps to provide a seat for the student at any school. And therefore, that left the parents in a position of having to unilaterally place the student, and they provided a 10-day notice at which point in time the district could have cured, either by saying, well, you need to go to I-HOPE, and that's where we will fund, because that's our choice, or where you are is fine, you know, as long as you prove to us that they can fulfill his penancy baseline. They did neither. Okay, Mr. Ashanti. Okay, Mr. Ashanti, we've kept you past your time. You have a minute of rebuttal, and we'll move to hearing from Mr. Lee. Thank you. Thank you. Mr. Lee. Good morning, Your Honors. Can you hear me? Yes, we can. I can. Yes. Great. Thank you. Please proceed. This court should affirm the district court's decision. As both of Your Honors have pointed out, this case is in every way materially identical to what happened in Ventura Di Paulino. The only reason why we are hearing this appeal separately is because the parents, in all these cases, represented by Carl here, by opposing counsel, filed separate cases, and the parties agreed to hear some of them in tandem, as would happen in Ventura Di Paulino, because there was a recognition that it would be a bellwether appeal. So, the fact that this has come later in no way suggests there is anything different. And to just put a really fine point, a pin on this, the Nestis moved their child here at the exact same time, between the exact same two schools at issue in Ventura Di Paulino, because they were all part of the same cohort. And this idea that the department allegedly didn't affirmatively place the child in I Hope is an argument they advanced in Ventura Di Paulino that that panel explicitly rejected and said, as the district court here actually concluded, that it makes sense that a presumptively appropriate interim placement, which was I Hope here, that was previously acceptable, is the one that the school district can say the child should continue to be educated at. Could you imagine, Mr. Lee, could you imagine a circumstance in which a setting that was previously acceptable, because of a massive departure of staff, for example, becomes unacceptable, and a new kind of pendency placement is required? That's possible, right? A school could basically shut down overnight or lose all its staff because of a labor issue. Sure, sure. And become then unavailable. Yes, but that's not what happened here, Your Honor. And I understand, and all the facts of the departure were litigated in Ventura Di Paulino. Like I said, it's the exact same situation, and an opposing counsel is trying to sort of dance around semantic differences. It's very telling that he cannot offer you a true factual distinction in this case. I assume that this case is identical to Ventura Di Paulino. Is Ventura Di Paulino correct? Now, we're bound by it, but of course, we could always ask. Hello? Judge Calabresi? Yes, can you hear me? We lost you on some words. Yeah, I'm sorry. We could always ask our court to reconsider Ventura, in this case, in bank. Why should the city be able to make a transfer and the parents not? Sure, Your Honor. Well, I would just first point out that the entire court twice denied on bond to consider the opinion of Ventura Di Paulino. And I think the reason is because that opinion persuasively presented three different types of reasons why the authority to choose dependency placement in the first instance resides with the school district. One, it's the text and structure, as the opinion pointed out. Two, as the court pointed out, the way that dependency is litigated, the school district, this is public funds that aren't subject to recoupment once that decision is made. And so, given that structural imbalance, it makes sense for the school district, in the first instance, to make that determination. And the third reason, as this court pointed... But the parties would be imposing, or might be imposing, we don't have any evidence in this case, a higher burden when they make the change just on their own. Well, I... Sorry? I'm not hearing you. Okay. Well, I think your question was, is it because they are situated? The parents in the department are situated differently. And yes, that's correct. The fact that the parents can still receive the money, but they don't have to pay it back, even if that choice was wrong in the instance. For example, in this case, in the Netsky case, they lost on their faith claim all the way through. But to say that school districts, large and small, in this district have to pay out pendency in the first instance, when that right has always relied with the school district, doesn't make a lot of sense. And I do want to... I know time is short, so I do want to address the footnote 65 situation, which counsel now has eased on to say that it is applicable. So, a couple of points on that. This court in Ventura di Polina was very clear that that is not this situation. This is not what happened here. And so, their attempt now to say that it is, is really disingenuous. And the footnote is not meant to be invoked at the 11th hour of the case that's already been set. It's meant to be invoked when the original school is unavailable, so the school district can consider how and where the child's most recently agreed upon educational program can be provided. And if the school refuses to engage, or if the placement is truly unavailable, if the school has, for example, shut down, parents can then seek injunctive relief. And the panel in Ventura di Polina pointed to a 4th Turkey case where that happened. And if you read that case, you can tell very clearly that's not what happened in this case or in the Ventura di Polina case. But even if... Mr. Lee? Oh, go ahead. You can ask. Oh, I was going to say, even if it's applied here, we didn't fail to provide or refuse penancy, and there's no evidence that I hope is unavailable. This is all over the record on page 21 of the appendix. This is the first level administrative order. It showed that the parents are expressly disavowed needing to show unavailability on page 54 of the record. Quote, there is no dispute between the parties that I hope is an available placement. It is just that the family chose to move from I hope to I brain when I brain split off from the I hope school. Page 55 of the record. I hope is available, and that fact is agreed to by the parties. The district court... Okay, Mr. Lee, I'm going to just interrupt for a second because that seems well established. Mr. Ashanti, if I understood him correctly, seemed to be suggesting that the Neskis are differently positioned from the plaintiffs in Ventura de Paulino because of their prior history in obtaining the placement, perhaps, if I understood correctly. Is there any distinction there that needs to be explained? Thank you for raising that. Yes, I wanted to get to that. There is no distinction. In both cases, the parents and the child made a placement at I hope. The state determination for that particular school year, IHO adjudicator said I hope was an appropriate placement. That paper was denied, and they needed to pay reimbursement. In both cases, the school district acceded to that and agreed to that and said they would continue to pay for I hope going forward. There's no basis to distinguish on that either. It is exactly the same. If there is any doubt, I would urge this panel to look at the briefs that we filed in the underlying cases, and you will see that they are carbon copies to one another because it's the same issue. It's the same parties, and it's the same argument. There really is no difference. You've passed your time.  Thank you very much. Was there any rebuttal, Your Honor? You have one minute of rebuttal, Mr. Shanti. Thank you, Your Honor. Opposing counsel mischaracterizes footnote 65 in its applicability. Footnote 65 specifically states the school district either refuses or fails to provide pendency services to the child. That is not what was found in Paulino. That is the case here. And the key to the court understanding... Wait a second. Wait a second. I'm looking at the footnote. It says where the school providing the child's pendency services is no longer available...  ...and the school district either refuses or provides. So what is there in the record to suggest that it's no longer available? Well, Your Honor, it functionally is unavailable because there was never any seat that was left for the student. The parents cannot place a student in a school where there is no... And that was the argument raised to the district court? That it was not available? Well, previously our position was it was not required as a matter of law, but factually that was always the case. So the opposing counsel says, oh, well, they didn't argue unavailability prior, but that's because our reading of the law, which on the district level, several judges agreed with us, was unavailability was not necessary to prove. This is the first instance where it was shown. Factually, that was the case. And the key to understanding that is in A-70 and A-77 of the joint appendix where Judge Nathan states that there was an attempted veto of the school district's choice of location, but on reconsideration, she understood that she was wrong factually, that there was no choice made by the school, that there was no obligation fulfilled by the district. And so she stated simply that there was no obligation on the part of the district to provide propensity services for the student, which is wrong as a matter of law, Your Honor. All right. Thank you. Thank you. Why don't you wrap up? Because your time has expired. Certainly. So at first, Judge Nathan got it wrong on the facts because there was no affirmative provision of services. And then Judge Nathan got it wrong on the law because the DOE was obligated to provide. Thank you very much. I think we have the arguments. We'll reserve decision. Thank you. Thank you.